UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FOUR CORNERS FARMS, INC.,

CASE NO.:

**08-22211-CIV-LENARD/GARBER**

Plaintiff,

-vs-

APL CO. PTE LTD. and AMERICAN
PRESIDENT LINES, LTD.

Defendants.

_____/

FILED by JC D.C.
ELECTRONIC

AUG. 6, 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## COMPLAINT

Plaintiff, Four Corners Farms, Inc. ("Four Corners"), by its attorneys, Sarnoff and Bayer, LLP, brings this Complaint against the Defendants, APL Co. Pte Ltd and American President Lines, Ltd (collectively the "Defendants") and alleges as follows:

### The Parties

1.  Plaintiff Four Corners is a corporation organized under the laws of the State of Georgia, with its principal place of business in Register, Georgia.

2.  Upon information and belief, Defendants are foreign corporations with offices in Miami-Dade County, Florida.

### Jurisdiction and Venue

3.  Jurisdiction is proper pursuant to 28 U.S.C. §1332(a) as this action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.  Venue is appropriate in this District pursuant to 28 U.S.C. §1391(a) and by virtue of agreement of the parties.

### Facts Relevant to the Claims for Relief

5.     On or about August 23, 2006, the parties entered into a Service Contract, identified by No. LA06/0236 (the "Contract") whereby the Defendants agreed to be the carrier of certain perishable onions (the "Cargo") being shipped by Four Corners. (A copy of the Contract is annexed as Exhibit A and is incorporated by reference herein). Paragraph 8 of the Contract provided that the Contract was in full force and effect until, and through, February 29, 2008.

6.     In or around November of 2007, a workers' strike occurred at the Cargo's port of origin in Callao, Peru. As a result of the strike, which lasted approximately two (2) weeks, the Defendants were unable to ship Four Corners' Cargo.

7.     Prior to the port strike, Four Corner's delivered, and Defendants accepted, four (4) containers, each with a cost basis of $16,000.00, at port for Defendants to ship.

8.     The four (4) containers remained at port for approximately one (1) month before they were shipped. As a result of the delay and improper refrigeration, each of the four (4) containers was unusable and had to be destroyed in accordance with the United States Department of Agriculture ("USDA") regulations.

9.     Subsequent to the cessation of the workers' strike, the Defendants resumed shipping the cargo of certain vendors, but failed to ship Four Corners' Cargo. Four Corners made numerous requests for bookings of shipment from the Defendants from November of 2007 through January 2008, the majority of which were not accepted by the Defendants.

10.    As a result of Defendants failure to ship the Cargo, Four Corners lost no fewer than seventy (70) containers of onions, exclusive of the four (4) containers that were shipped a month

2

SARNOFF & BAYER
3000 SHIPPING AVENUE, COCONUT GROVE, FLORIDA 33133 • TEL (305) 441-5966 • FAX (305) 441-5977

after delivery to port of origin, each of which cost Four Corners approximately $7,200.00 in actual expenses.

11. Four Corners was unsuccessful in mitigating any of its damages, despite repeated and diligent attempts to do so.

## COUNT I
### Breach of Contract

12. Four Corners repeats the allegations contained in paragraphs 1 through 11 of the Complaint as if fully set forth herein.

13. As described above, Defendants are in breach of their obligations to ship the Cargo pursuant to the Contract.

14. Defendants failed to provide written notice of their intent to terminate the Contract as required pursuant to Paragraph 2(b).

15. At all times, Four Corners has fulfilled its obligations pursuant to the Contract.

16. All conditions precedent to the maintenance of this action have been performed, have occurred or have been waived.

17. Plaintiff has retained the law firm of Sarnoff and Bayer, LLP for the prosecution of this action and has agreed to pay the law firm its reasonable attorneys' fees and costs.

18. As a result of Defendants' breach of the Contract, Four Corners has been damaged, in an amount to be determined at trial, but in no event less than $568,000.00, plus interest, costs and expenses, including, without limitation, an award for its attorneys' fees.

**WHEREFORE,** Four Corners demands judgment against Defendants on its claim for relief,

3

for breach of contract, in an amount to be determined at trial, but in no event less than $568,000.00, in favor of Four Corners, plus an award of interest, costs, and expenses, including, without limitation, an award for attorneys' fees, together with such other and further relief as this Court may deem just and proper.

## COUNT II

### Fraud

19. Four Corners repeats the allegations contained in paragraphs 1 through 11 of the Complaint as if fully set forth herein.

20. During the approximate one (1) month period that Four Corner's four (4) containers remained at port of origin prior to shipping, Defendants failed to properly refrigerate the produce as required by contract.

21. Had the Defendants properly refrigerated the produce at all times it was under their control and custody, it is highly improbable that the produce would have been unusable.

22. Prior to leaving Four Corner's warehouse facility in Peru, the Plaintiff installed and activated a temperature control data recorder (the "Recorder(s)") in each of the four (4) containers to monitor and assure adequate refrigeration throughout the shipment process. Each of the Recorders had an activation life of thirty (30) days, which would have been more than sufficient had Defendants timely shipped the cargo. Further, Four Corners properly entered the requisite data on the Recorders, which included, *inter alia*, the name of the consignee, the name of the shipper, the date of the transaction, product information, and other information relevant to the container (the "Container Data").

4

23.     Upon arrival at the Four Corner's facility in Georgia, it was discovered by Four Corners that each of the Recorders had illicitly been replaced by the Defendants and that they failed to activate the Recorders. Further, the bills of lading for each container had the <u>same</u> Recorder identification number manifested, which should not have occurred as each number is unique. Finally, the Container Data that was entered with the Recorders by the Plaintiff prior to delivering the containers to the Defendants was no longer extant, serving as added indicia that the Recorders had intentionally been altered and improperly replaced.

24.     Based upon information and belief, the Defendants knowingly and intentionally tampered with the Recorders and otherwise attempted to commit a fraud upon Four Corners by deceiving it into believing that the proper temperature was maintained and the contractual terms and other procedures governing refrigeration had been followed.

25.     In addition to Four Corner's cost basis in its produce of $7,200.00 per container, it also incurred additional actual costs for the ocean freight, clearance, USDA inspections, handling and dumping as required by law, at the combined rate of $8,800.00 per container.

26.     Accordingly, Four Corners was damaged as a result of the fraud in the amount of $16,000.00 per container for a total combined damage, exclusive of costs, interest, and attorneys' fees of $64,000.00.

**WHEREFORE,** Four Corners demands judgment against Defendants on its claim for relief, for Fraud, in an amount to be determined at trial, but in no event less than $64,000.00, in favor of Four Corners, plus an award of interest, costs, and expenses, including, without limitation, and for

SARNOFF & BAYER
3000 SHIPPING AVENUE, COCONUT GROVE, FLORIDA 33133 • TEL (305) 441-5966 • FAX (305) 441-5977

attorney's fees, together with such other and further relief as this Court may deem just and proper.

Dated this 31st day of July, 2008.

                                SARNOFF AND BAYER
                                Attorneys for Plaintiff
                                3000 Shipping Avenue
                                Coconut Grove, Florida 33133
                                Telephone:    305-441-5966
                                Facsimile:     305-441-5977
                                E-Mail: nbayer@attglobal.net

                                BY: _____
                                     NEIL BAYER
                                     FBN: 615684

Amendment No. 3 Effective August 6, 2007
Amendment No. 4 Effective

# SERVICE CONTRACT NO. LA06/0236

ESSENTIAL TERMS PUBLICATION:
ESSENTIAL TERMS NO.

SERVICE CONTRACT TARIFF FMC NO.20
ET. NO. LA06/0236
TARIFFS OF GENERAL APPLICABILITY:
  APL FMC NO. AP1

This Service Contract ("Contract") is made and concluded by and between APL, ("Carrier") and Merchant and each of its affiliates identified herein (each and collectively referred to herein as "Merchant"), whereby the parties mutually agree as set forth in pages attached hereto.

In the event this Contract is signed on behalf of the Merchant by an agent, the undersigned agent warrants that 1) it is authorized and empowered by the Merchant to negotiate and enter into this Contract on behalf of the Merchant, 2) it is authorized and empowered to represent and act on behalf of the Merchant in respect to all activities undertaken within the scope of this Contract or related thereto, including the booking, carriage and handling of cargo and payment of freight and other charges, and 3) all representations made in this Contract regarding the Merchant's status as a shipper are true and correct.

|  Carrier  |  Merchant  |
|---|---|

(Signature)      Date:
Name: Bettye Hemphill
Title: Senior Analyst, Global Reefer Trade

APL Co. Pte Ltd. In its Individual Capacity and
as Agent for American President Lines Ltd.
1111 Broadway
Oakland, CA, 94607

(Signature)      Date:
Name: Robert D. Rushing
Title: President

Four Corners Farms, Inc.
760 John R. Coleman Road
Register, GA, 30452
Tel No: (912) 852-5098
Fax No: (912) 852-5097
Email Address: fourcornersfarms@hotmail.com
Customer Number: 00629038

Affiliates of Merchant covered by this contract:
None

## Shipper Certification

Pursuant to FMC regulation 46 C.F.R. 530.6, Merchant, by execution of this Contract, certifies its status and that of all its affiliates authorized to utilize this contract as:

(1) __X__ THE OWNER OF THE CARGO
(2) _____ MEMBER OF A SHIPPERS' ASSOCIATION
(3) _____ NON-VESSEL-OPERATING COMMON CARRIER
(4) _____ OTHER (Specify:_____)

If status is #2 above, Merchant certifies that any named members in this contract who are NVOCCs are so identified and that they have tariff(s) and bond(s) on file with the FMC as required by law and regulation.

If status is #3 above, Merchant certifies that any such NVOCC's have tariff(s) and bond(s) on file with the FMC in full compliance with FMC regulations and that copies of tariff pages reflecting same have been provided to Carrier.

Applicable Boilerplate: 101.A7
2-8/13RPK/4-8/20RPKMTC5


EXHIBIT A

APL Service Contract LA06/0236
Amendment No. 3 Effective  August 6, 2007
Amendment No. 4 Effective

# SERVICE CONTRACT - SC NO. LA06/0236

## Table Of Contents

Appendix E - Latin America Northbound ......................................................................................................... 7
Appendix A - TransPacific Eastbound (reserved)
Appendix B - TransPacific Westbound (reserved)
Appendix C - TransAtlantic Eastbound (reserved)
Appendix D - TransAtlantic Westbound (reserved)
Appendix F - Latin America Southbound (reserved)
Appendix G - Asia/Europe (reserved)
Appendix H - Europe/Asia (reserved)
Appendix I - Intra Asia (reserved)
Appendix J - Latin America - Eastbound, Westbound, Intra Latin (reserved)
Appendix K - Intra Europe (reserved)
Appendix M - EB Mex (reserved)
Appendix L - WB Mex (reserved)
Appendix Affiliates (reserved)

APL Service Contract LA06/0236
Amendment No. 3 Effective August 6, 2007
Amendment No. 4 Effective

Version March 15, 2004 101A7

## SERVICE CONTRACT

1. **APPLICATION OF CONTRACT**

(a) This Contract applies with respect to the transportation of Merchant's commodities listed in one or more appendices attached hereto (the "Appendix" or "Appendices") between the origin and destination locations listed in the Appendix. This Contract, its Appendices and exhibits thereto, together with the terms and conditions of Carrier's bill(s) of lading and tariffs (to the extent applicable after giving effect to this Contract and exhibits referenced herein) embodies the entire understanding between the parties.  There are no other agreements, understandings, conditions, warranties or representations, oral or written, express or implied, with reference to the subject matter of this Contract, which are integrated herein.  No modification hereof shall be of any force or effect unless reduced to writing making reference to this Contract and executed by the parties and duly filed with the U.S. Federal Maritime Commission. In the event of any conflict among the terms and conditions of this Contract, the bill(s) of lading and the Carrier's applicable tariff(s), the order of governance shall be, first, the bill(s) of lading, second, this Contract, and third, the tariff(s).

(b) For purposes of determining whether a shipment is made during the term of this Contract, the date when the shipment is received by the Carrier or its agent shall govern.  A shipment shall not be considered as "received" until the full bill of lading quantity has been received.

(c) Merchant represents it is authorized and empowered to enter into this Contract by and on behalf of each and every affiliate, if any, identified in the attached Appendix, and to represent such affiliates in all matters relating to carriage of cargo tendered hereunder.

(d) For all cargo movements hereunder from or to the People's Republic of China, Japan, Taiwan and Mexico, the term "Carrier" shall refer to American President Lines, Ltd., a Delaware USA corporation. For cargo movements from or to all other locations, the term "Carrier" shall refer to APL Co. Pte Ltd, a Singapore corporation.  APL Co. Pte Ltd hereby assumes the obligations, if any, of American President Lines, Ltd. under paragraph 6 below, including the obligation to pay liquidated damages under subparagraph 6 (b).

2. **EFFECTIVE DATE AND TERM**

(a) This Contract shall become effective as of the date herein, or that date on which it is fully executed and filed with the US Federal Maritime Commission, whichever is later.  It shall continue in effect until the expiration date, or lapse of the period, specified in the Appendix.

(b) Carrier may, at any time after Merchant has met the Minimum Volume Commitment ("MVC") set forth in one or more Appendices to the Contract, terminate any such Appendix, on thirty (30) calendar days written notice to Merchant. Likewise, if Merchant has met the MVC applicable to the entire Contract, Carrier may terminate the Contract, on thirty (30) calendar days written notice to Merchant.

3. **MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING**

(a) Merchant shall tender not less than the MVC, including specific sub-MVCs, if any, as set forth in an Appendix, during the term hereof. Shipments shall be deemed within the scope of this Contract and shall be counted toward the MVC if made by Merchant's parent, subsidiary, or other affiliated companies or entities under common control, or by an authorized agent in behalf of any such entity, all of which entities must be identified on the signature page or Appendix hereto. Merchant shall remain responsible to Carrier for all obligations of non Merchant parties shipping cargo under this Contract.

(b) If Merchant fails to tender shipments in sufficient quantity to meet Merchant's undertakings as set forth in the foregoing subparagraph 3 (a), Merchant shall, within 30 calendar days of receipt of

3 of 9

APL Service Contract <u>LA06/0236</u>
Amendment No. 3 Effective August 6, 2007
Amendment No. 4 Effective

Carrier's invoice, pay deadfreight in the amount of $350 for each FEU by which the MVC (or sub-MVCs, as the case might be) exceeds the volume actually tendered.

(c) No volume shipped under this Contract shall apply toward any volume commitment of any freight tariff or other service contract.

(d) Merchant shall book its space requirements for shipments tendered under this Contract not less than 7 calendar days prior to the scheduled arrival of the Carrier's vessel at port of loading. If the shipments are offered upon less than 7 calendar days' notice, Carrier may accept such shipments, which shall then count toward the MVC or decline the shipments, at its option.

4. <u>DISPUTES</u>

(a) Any and all disputes arising out of or in connection with this Contract, including any failure by the Merchant to pay, or by the Carrier to perform, as required hereunder, may be referred by either party to litigation before any Court of competent jurisdiction. The following locations shall each be considered proper for jurisdictional purposes: the place of legal residence (including incorporation) or principal place of business of the responding party. Alternatively, the parties may agree to resolve disputes by arbitration in San Francisco, California (or such other place mutually agreed upon by the parties) under the rules of the American Arbitration Association. The arbitration shall be before a single English speaking arbitrator appointed by the parties or, failing such appointment and upon the application of either party, by the American Arbitration Association. There shall be no restrictions on the nationality of the arbitrator. Except by agreement of the parties to the dispute, there shall be no prehearing discovery. The costs and expenses of the arbitration or litigation (including reasonable attorney's fees and costs) shall be borne by the non-prevailing party. The decision of the arbitrator shall be final, binding and not subject to further review.

(b) The decision of the arbitrator may be enforced by any court, tribunal or other forum as may properly assert jurisdiction. The parties hereto expressly consent and agree that the United States District Court for the Northern District of California has personal jurisdiction for this purpose.

(c) This Contract shall be construed pursuant and subject to the maritime law of the United States, including but not limited to the United States Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998. To the extent the maritime law of the United States is silent on any given legal issue that might arise under this Contract, then reference shall be made to the laws of the State of New York without reference to its conflicts of laws provisions.

5. <u>RATES and CHARGES</u>

(a) Carrier shall assess the freight rates and charges set forth or referenced in the Appendix to all of the Merchant's shipments tendered under this Contract.

(b) Except to the extent that the freight rates set forth in the Appendix expressly include or are not subject to other charges, all of the items contained in the Tariff(s) listed in the Appendix shall apply to and govern shipments tendered under this Contract, including but not limited to: bunker fuel, currency exchange and other surcharges, and all arbitraries, storage, containerized cargo demurrage, equipment detention, and all other charges, together with all additions, deletions or modifications thereof, all Tariff rules and provisions, and all supplements thereto and re-issues thereof.

(c) If at any time during the term of this Contract an increase in the applicable charges or surcharges provided in the Tariff occurs, which would otherwise apply to Merchant's shipments in the absence of this Contract, the charges or surcharges specified or incorporated by reference in the Appendix shall also be increased as of the same date the increase becomes effective in the Tariff.

(d) If at anytime during the term of this Contract a General Rate Increase ("GRI") or an increase in a specific commodity rate occurs in the Tariff, which would otherwise apply to Merchant's shipments in the absence of this Contract, then the GRI or commodity rate increase shall also be added to and

included in the rates and charges set forth or incorporated by reference in the Appendix, as of the same date the GRI or increase becomes effective in the Tariff.

6. <u>SERVICE; CARRIER LIABILITY</u>

(a) In consideration for Merchant's MVC, Carrier shall provide container equipment for booked shipments and shall accept each shipment timely offered by Merchant in order to meet Merchant's MVC or sub-MVCs, if any; provided that Carrier shall have no obligation with respect to cargo tendered in excess of 10% of Merchant's MVC during any of the sequential 30 day periods covered by this Contract, the first of which commences with the effective date of the Contract. For purposes of this Contract, "timely offered" shall mean shipments booked pursuant to the minimum notice provision of subparagraph 3 (d).

(b) In the event that Carrier fails to provide container equipment or fails to accept each shipment timely offered in accordance with its obligations under subparagraph 6(a) above (collectively "Booking Refusal"), and such Booking Refusal prevents the Merchant from meeting its MVC during the term of this Contract, the parties acknowledge that Merchant may suffer damages which are difficult to predict. Accordingly, the Carrier shall pay liquidated damages in the amount of US$350 per FEU by which Carrier's Booking Refusal(s) results in carriage of less than the original unadjusted Merchant's MVC during the term of this Contract. Furthermore, the Merchant's MVC shall be reduced by the volume tendered, but not carried as a result of a Booking Refusal. The Carrier's obligation to carry the original unadjusted Merchant's MVC shall not be reduced by Carrier's Booking Refusal(s).

(c) Carrier undertakes to provide the services and remedies identified in subparagraphs 6 (a) and 6 (b) above. Carrier does not undertake to perform Merchant's requirements for ocean transportation or to supply container equipment other than on a mutually agreed, space-available basis after Carrier's receipt and transportation of Merchant's MVC.

(d) Except as expressly set forth in this paragraph 6, shipments under this Contract shall be subject to all of the terms and conditions of Carrier's bill of lading in effect at the time of shipment and Carrier's liability for cargo loss, damage, delay, misdelivery or other breach of the Contract of carriage, if any, shall be determined exclusively under the terms and conditions of the bill of lading.

7. <u>FORCE MAJEURE</u>

If either party is prevented from performing its obligations under this Contract as the result of a condition or cause beyond its control, including but not limited to, labor disputes, embargoes, casualties (whether or not the negligent acts or omissions or fault of a party contributed thereto), acts of God, civil disturbances, war, terrorist-related events, war-like events, act or default of the other party and restraint of laws or governments, but excluding loss of market or other commercial contingencies, such failure to perform shall be excused to that extent but no further. The party claiming excused performance shall use commercially reasonable efforts to promptlynotify the other of the force majeure event excusing its performance. If an event wholly or partially preventing the performance of a party continues for more than 30 calendar days, either party may terminate this Contract upon delivery of written notice of termination and further performance by the parties shall be excused.

8. <u>COMPENSATION and PAYMENT of FREIGHT and CHARGES</u>

Carrier's freight charges computed in accordance with the Appendix, demurrage, detention, surcharges, arbitraries, and all other charges applicable under the Tariff and this Contract shall be paid in strict accordance with the Tariff and bill of lading before the release of the shipments on which charges accrued, or, in the case of prepaid shipments under negotiable bills of lading, before release of the original bills of lading.

9. <u>DATA AND COMMUNICATIONS</u>

(a) Merchant acknowledges and agrees that Carrier may collect, process, store and transmit data relating to Merchant (including its listed affiliates, referred to collectively as Merchant herein) as specified in this paragraph 9. Such information may include, without limitation, the Merchant's name, contact details (email, telephone number, fax number, address and the like), as well as information relating to Merchant's cargo, rates, vendors, contractors, agents and customers (collectively "Information"). Some Information may be deemed "personally identifiable information" subject to protection under the data privacy laws of certain jurisdictions. Merchant expressly agrees that Carrier may collect, process, store and transmit Information across state and, in some circumstances, national boundaries in connection with Carrier and its affiliates' administration of the relationship with Merchant as described herein. Merchant also agrees that Carrier may disclose the Information from time to time to certain third parties, including, without limitation, (i) affiliates, vendors, agents and subcontractors that perform services for Carrier, ii) government authorities, or iii) those parties with a need to know in the event that, in Carrier's good faith belief, a disclosure is necessary to protect its legal rights. In addition, Carrier may transfer such Information to a successor entity upon a merger, consolidation or other corporate reorganization in which Carrier participates or to a purchaser of all or substantially all of Carrier's assets.

(b) Merchant acknowledges and agrees that by executing this Agreement and by providing address information (street or other postal address, telephone, facsimile ("fax") and/or email address), that a business relationship exists between the parties. In addition, Merchant agrees that Carrier may use any or all of the address information so provided to communicate with Merchant via fax, email, phone, mail or in person. The purpose of such communications may include, without limitation: i) provision of services to Merchant, ii) notification of important changes, improvements or opportunities relating to Carrier's services (including advertisements and promotions, new service announcements and other cost saving opportunities) and/or iii) discussion of other issues relating to Merchant's logistics or transportation needs. Should Merchant at any time elect to update Merchant's address information or to limit the kind and nature of the communications Merchant wishes to receive, Merchant shall notify Carrier to that effect in writing.

10. <u>SECURITY & C-TPAT</u>

Carrier participates in the Customs-Trade Partnership Against Terrorism ("C-TPAT") program. Carrier encourages Merchant to also participate in the C-TPAT program, and to observe the supply chain security guidelines prepared by the United States Customs and Border Protection Service. Current C-TPAT security guidelines can be reviewed at:
http://www.customs.gov/xp/cgov/import/commercial_enforcement/ctpat/importers/importer_security.xml.

11. <u>SHIPMENT RECORDS</u>

The shipment records required to be maintained under 46 CFR Section 530.15 shall consist of copies of Merchant's bills of lading, or computer generated bills of lading, any force majeure correspondence and notices, and any correspondence concerning Merchant's or Carrier's failure to perform, all of which shall be maintained by Carrier at its offices. Upon request from Carrier, Merchant shall promptly submit to the Carrier information and documents sufficient to verify the quantity and nature of cargo shipped under this Contract. Shipping documents provided by Merchant governing individual shipments under this Contract and all copies thereof shall bear a notation showing the number of this Contract. The designation by Merchant of cargo as Contract cargo by affixing the Contract number on the shipping documents provided by Merchant shall be made at the time of the issuance of the bill of lading and shall be conclusive.

The Merchant, and the Carrier, shall cooperate in maintaining shipment records documents and reports as they may from time to time mutually determine to be administratively desirable. The person who will respond to requests on behalf of the Carrier to make shipping records available to FMC is the Carrier's Tariff Publishing Officer, 1111 Broadway, Oakland, CA 94607, Telephone No. (510) 272-8270

APL Service Contract <u>LA06/0236</u><br>
Amendment No. 3 Effective  August 6, 2007<br>
Amendment No. 4 Effective

APPENDIX E

SERVICE CONTRACT No: <u>LA06/0236</u>

1. **ORIGIN:**
   PERU

2. **DESTINATION:**
   UNITED STATES

3. **COMMODITIES:**
   A. Onions, Fresh, Refrigerated

4. **MINIMUM VOLUME COMMITMENT:**
   100 FEU

5. **SERVICE COMMITMENTS:**
   The service commitment applicable hereto is that set forth in Paragraph 6 of this contract.

6. **CONTRACT RATES:**
Rates in USD unless otherwise noted. Rates subject to applicable arbitraries, outports and inland charges as specified in applicable tariff unless otherwise noted in paragraph 6 and 10 of this appendix.

   **Onions, Fresh, Refrigerated**
   **Callao, Peru (CY)**

   |     | Destination   | Dlv Md | R40H |
   |-----|---------------|--------|------|
   | AM4 | Glennville, GA | DR     | 3956 |

7. **LIQUIDATED DAMAGES:**
   The liquidated damages for non-performance hereunder are set forth in Paragraphs 3 (b) and 6 (b) of this contract.

8. **EXPIRATION DATE OR PERIOD OF TERM:**

   |     | Commencement:      | Aug 23, 2006  |
   |-----|--------------------|---------------|
   | AM4 | Effective through: | Feb 29, 2008  |

9. **SIGNATURE**
   See Signature Page

10. **ASSESSORIALS**
a)  The contract rates set out in paragraph 6 are inclusive of the following extra charges where applicable:
    None

b)  The contract rates set out in paragraph 6 are not subject to the following extra charges where applicable:
    **1. Advance Manifest Compliance Charge(AMS)**

    **2. Chassis Charge(CHS)**

c)  The following extra charges shall apply during the term of this contract:
    **1. Internal Logistics Cost  -  AM3**

    AM4   Subject to Internal Logistics Cost $ **1388**/R40H for shipments which logistic service is performed by NEW TRANSPORT SA

    All other charges not listed above shall apply pursuant to Paragraph 5 (b) of this contract.

7 of 9

APL Service Contract <u>LA06/0236</u>
Amendment No. 3 Effective  August 6, 2007
Amendment No. 4 Effective

## **101 BOILER PLATE**
<u>101.A7</u> applies


## **OTHER TERMS:**
AM1    The Shipper is allowed 1 day Free Gen-Set Charge with maximum US$ 100/FEU at origin Callao, Peru.
AM1    The Shipper is allowed Three (3) additional days of free Plug-In at origin Callao, Peru.

## **107 REFUND VIP  -**
AM4    Carrier will pay refunds in the amount of US$ **1388**/FEU for shipments with logistic service performed by NEW TRANSPORT SA; to the merchant on freight charges paid for shipments made under the terms of this contract. Payment of refund will be calculated on a bi-monthly basis and refund will be paid within 60 days after the end of the bi-monthly basis, provided that all freight dollars qualifying for the refund have been paid to the ocean carrier

## **108 CARGO FREE TIME AND DEMURRAGE**
**AM2**    As an exception to Rule 22 of AP1, Cargo Freetime at Savannah, GA will be 2 additional working days.

APL Service Contract <u>LA06/0236</u>
Amendment No. 3 Effective  August 6, 2007
Amendment No. 4 Effective

**APPENDIX AFFILIATES**
**SERVICE CONTRACT No: LA06/0236**

| | Affiliate | Address | |
|---|---|---|---|
| AM3 | NEW TRANSPORT S.A. | AV. M. ROCCA Y BOLOGNA | LIMA  PE |

9 of 9

**LexisNexis** Total Research System

Switch Client | Preferences | Sign Out | ? Help

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | Dossier | History

Source: Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > **United States Code Service - Titles 1 through 50**
TOC: United States Code Service - Titles 1 through 50 > /.../ > CHAPTER 85. DISTRICT COURTS; JURISDICTION > **§ 1332. Diversity of citizenship; amount in controversy; costs [Part 1 of 3]**
Terms: **28 USC 1332(a)** (Edit Search | Suggest Terms for My Search)

↙Select for FOCUS™ or Delivery

28 USCS § 1332

Retrieve Legislative Impact® ($)

UNITED STATES CODE SERVICE
Copyright © 2008 Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** CURRENT THROUGH PL 110-296, APPROVED 7/30/08, WITH GAPS OF 110-289, 110-291, AND 110-293 ***

TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV. JURISDICTION AND VENUE
CHAPTER 85. DISTRICT COURTS; JURISDICTION

**Go to the United States Code Service Archive Directory**

**28 USCS § 1332**

**NITA Commentary:**

Review expert commentary from The National Institute for Trial Advocacy preceding 28 USCS § 1441 (relating to choice of forum).

THE CASE NOTES SEGMENT OF THIS DOCUMENT HAS BEEN SPLIT INTO 3 DOCUMENTS.
THIS IS PART 1.
USE THE BROWSE FEATURE TO REVIEW THE OTHER PART(S).

§ 1332. Diversity of citizenship; amount in controversy; costs

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between--
   (1) Citizens of different States;
   (2) citizens of a State and citizens or subjects of a foreign state;
   (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
   (4) a foreign state, defined in section 1603(a) of this title [28 USCS § 1603(a)], as plaintiff and citizens of a State or of different States.

For the purposes of this section, section 1335 [28 USCS § 1335], and section 1441 [28 USCS § 1441], an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $ 75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

(c) For the purposes of this section and section 1441 of this title [28 USCS § 1441]--
   (1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business; and
   (2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

(d) (1) In this subsection--
   (A) the term "class" means all of the class members in a class action;
   (B) the term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action;
   (C) the term "class certification order" means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action; and

LexisNexis® Total Research System

Switch Client | Preferences | Sign Out | ? Help

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | Dossier | History

Source: Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > **United States Code Service - Titles 1 through 50**
TOC: United States Code Service - Titles 1 through 50 > /.../ > CHAPTER 87. DISTRICT COURTS; VENUE > **§ 1391. Venue generally**
Terms: **28 USC 1391(a)** (Edit Search | Suggest Terms for My Search)

✦Select for FOCUS™ or Delivery

*28 USCS § 1391*

Retrieve Legislative Impact® **($)**

UNITED STATES CODE SERVICE
Copyright © 2008 Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

\*\*\* CURRENT THROUGH PL 110-296, APPROVED 7/30/08, WITH GAPS OF 110-289, 110-291, AND 110-293 \*\*\*

TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV. JURISDICTION AND VENUE
CHAPTER 87. DISTRICT COURTS; VENUE

**Practitioner's Toolbox**

- History
- Interpretive Notes and Decisions
- History; Ancillary Laws and Directives

Resources & Practice Tools

- Related Statutes & Rules

Research Guide
Federal Procedure:
> 17 Moore's Federal Practice (Matthew Bender 3d ed.), ch 110, Determination of Proper Venue §§ 110.01 et seq.
> 1 Federal Habeas Corpus Practice and Procedure (Matthew Bender), ch 2, A General Description of Habeas Corpus § 2.0.
> 6 Civil Rights Actions (Matthew Bender), ch F4, First Amendment Rights § F4.01.

Forms:
> 4 Bender's Federal Practice Forms, Forms 12:13, 12:43, 12:60, 12:61, 12:64, 12:200, Federal Rules of Civil Procedure.
> 5 Bender's Federal Practice Forms, Forms 18:1, 18:5, Federal Rules of Civil Procedure.
> 5 Bender's Federal Practice Forms, Forms 22:1, 22:2, Federal Rules of Civil Procedure.

Intellectual Property:
> 4 Chisum on Patents (Matthew Bender), ch 11, Patent and Trademark Office Procedures § 11.06.
> 8 Chisum on Patents (Matthew Bender), ch 21, Jurisdiction and Procedure in Patent Litigation § 21.02.
> 3 Trademark Protection and Practice (Matthew Bender), ch 11, Jurisdiction, Claims and Defenses § 11.05.

More...

Go to the United States Code Service Archive Directory

**28 USCS § 1391**

§ 1391. Venue generally

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

(c) For purposes of venue under this chapter [**28 USCS §§ 1391** et seq.], a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

(d) An alien may be sued in any district.

(e) A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

(f) A civil action against a foreign state as defined in section 1603(a) of this title [**28 USCS § 1603(a)**] may be brought--
   (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
   (2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title [**28 USCS § 1605(b)**];
   (3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title [**28 USCS § 1603(b)**]; or
   (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political

08-22211-CIV-LENARD/GARBER
Case 1:08-cv-22211-JAL Document 1 Entered on FLSD Docket 08/06/2008 Page 18 of 18 D.C.

FILED
ELECTRONIC
AUG. 6, 2008
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
FOUR CORNERS FARMS, INC.

**DEFENDANTS**
APL CO., PTE LTD., and AMERICAN PRESIDENT LINES, LTD.

(b) County of Residence of First Listed Plaintiff **REGISTER, GEORGIA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Neil Bayer, Esquire, SARNOFF & BAYER, 3000 Shipping Avenue, Coconut Grove, FL 33133 (305-441-5966)

Attorneys (If Known) **MIAMI DADE COUNTY**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

Dade **08-22211-CIV-Lenard/Garber**

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Brief description of cause:
Breach of a Marine Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 07/30/2008
SIGNATURE OF ATTORNEY OF RECORD _Neil B_

**FOR OFFICE USE ONLY**
RECEIPT # 98466 AMOUNT $ 350.00 APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

08/06/08